IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CLINTON R. ALSUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 08-3094-KI |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | OPINION AND ORDER |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

KING, J.,

  Plaintiff Clinton Alsup challenges the Commissioner's decision denying his applications for

disability insurance benefits and supplemental security income payments under Titles II and XVI

of the Social Security Act.  I have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  I AFFIRM

the Commissioner's decision.

  The  administrative  law  judge  ("ALJ")  applied  the  five-step  sequential  disability

determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920.  *Bowen v. Yuckert*, 482 U.S.

137, 140 (1987).  The ALJ determined that Alsup retained the residual functional capacity ("RFC") to perform work in the national economy and is not disabled.  The court reviews that decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

Alsup contends the ALJ erred at step three of the decision-making process by failing to properly evaluate whether he satisfied the criteria for any of the presumptively disabling conditions enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  He contends the ALJ erred in assessing his residual functional capacity ("RFC") by discounting medical evidence of his mental impairments, lay witness statements of his wife, and the disability rating decision of the Department of Veterans Affairs ("VA").  He also contends the ALJ elicited testimony from the vocational expert ("VE") with assumptions that did not accurately reflect his functional limitations. Alsup argues the ALJ failed to show that alcohol abuse is a material factor in his disability.

## I.    **Listing of Impairments**

At step three of the decision-making process, the regulations apply a conclusive presumption that the claimant is disabled if the ALJ determines that the claimant's impairment is equivalent to "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 US at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d).  The criteria necessary to establish the presumptively disabling impairments are enumerated in the Listing of Impairments.  The claimant has the burden of proving that he satisfies the criteria for a listed impairment.  *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990); *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999 ); 20 C.F.R. §§ 404.1526, 416.926.

Alsup contends the ALJ failed to consider the combined effects of his multiple impairments in determining whether they satisfied the criteria for any condition in the Listing of Impairments. In the proceedings before the ALJ, Alsup did not contend his combined impairments satisfied the criteria for any specific impairment in the Listing of Impairments. He did not raise this argument before the Appeals Council. An ALJ is not required to compare a claimant's combined impairments to the criteria for a listed impairment unless the claimant identifies the Listing, offers a theory as to how his impairments satisfy the criteria, and points to evidence that shows his impairments satisfy the criteria. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Alsup did not do these things during the administrative proceedings.

In his opening brief to this court, Alsup did not specify which of the listed impairments he believed his medical findings satisfied. In his Reply Brief, Alsup for the first time suggested his impairments satisfied listings 12.04 *Affective Disorders*, 12.06 *Anxiety Related Disorders*, 11.03 *Epilepsy - nonconvulsive epilepsy (petit mal, psychomotor, or focal)*, 5.05 *Chronic Liver Disease*, and 3.10 *Sleep-related breathing disorders.* Alsup did not give the ALJ, the Appeals Council, or the Commissioner's attorneys an opportunity to respond to these contentions.

Even assuming the argument is properly before the court, Alsup did not identify the criteria for the Listings he asserts or point to medical evidence showing that his impairments satisfy the criteria. For example, to establish the severity necessary for Listings 12.04 and/or 12.06 involving mental disorders, a claimant must demonstrate marked impairment in at least two of the four so-called B criteria, *viz.* activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and repeated episodes of decompensation of extended duration. Listing of Impairments §§ 12.04, 12.06. Alsup failed to cite any medical finding or treating source

opinion that would support the requisite level of impairment in any of the four B criteria. Alsup relies primarily on global assessment of functioning (GAF) scores indicated by a nurse practitioner. The GAF scale describes function in global terms and does not directly correlate to the four categories of function used in the B criteria for Listings 12.04 or 12.06.

To satisfy the criteria in Listing 11.03 for epilepsy, a claimant must demonstrate that he experiences petit mal seizures more frequently than once weekly despite compliance with prescribed treatment. He must show that the seizures cause alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity. Listing of Impairments § 11.03; SSR 87-6, 1987 WL 109841, *3. Alsup did not allege or present medical evidence establishing the requisite frequency of seizures, his serum levels of Dilantin were consistently subtherapeutic indicating he did not adhere to prescribed therapy, and the evidence does not support functional limitations of sufficient severity to satisfy the listing criteria. Admin. R. 322-23.

Alsup's argument with respect to Listings 5.05 and 3.10 are equally unsupported by the evidence in the record. Although the medical evidence supports diagnoses of hepatitis C and sleep apnea, a diagnosis without evidence of the requisite functional limitations does not satisfy the Listing criteria.

In summary, the ALJ reached the conclusion that Alsup failed to establish the necessary functional limitations after considering and drawing reasonable inferences from all the evidence Alsup presented. In doing so, the ALJ considered the combined effects of Alsup's various medical conditions. Alsup failed to properly challenge the ALJ's conclusion. Even if the challenge was proper, Alsup did not satisfy his burden of proof.

II.    **RFC Assessment**

The RFC assessment describes the work-related activities a claimant can do on a sustained, regular and continuing basis, despite the functional limitations imposed by his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184.  The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions.  SSR 96-8p, 1996 WL 374184 * 5.

Alsup contends the ALJ did not properly evaluate the medical evidence of his mental impairments.  Alsup established care with Paul Helgason, M.D., in March 2003.  Dr. Helgason prescribed the anti-depressant medications Citalopram and Trazadone to help Alsup with reported moodiness and difficulty returning to sleep after waking early.  Admin. R. 290-91.  In May 2003, Alsup was hospitalized for medical detoxification due to alcohol abuse.  He had a psychiatric consultation but declined all treatment options.  *Id.* at 216.  One month after that detoxification, Alsup complained of bad moods, anger, and insomnia associated with his reported abstinence from drinking.  He denied any real depression.  Dr. Helgason increased his Citalopram prescription.  *Id.* at 283.

In October 2003, at a sleep study consultation, Alsup reported he had no major personal problems, did not worry much, and did not lose his temper easily.  He did not report any depression. His wife reported he was easy going and got along well with people.  Alsup suggested it might be reasonable to stop his anti-depressant medications because those drugs had been prescribed for problems that occurred while he was drinking.  *Id.* at 304-05.  Alsup remained on the same medications, however, and continued to report improved mood through April 2004.  *Id.* at 307.

In June 2004, Alsup reported depression and anger and Dr. Helgason referred him to the VA mental health clinic. *Id.* at 372. Eugene Randall, M.D., performed a psychiatric evaluation in July 2004 for subjective concerns of sleep difficulty and depression. Dr. Randall observed a mild level of anxiety and Alsup's mood and affect were within the normal range. He diagnosed a single episode of major depression and changed Alsup's anti-depressant medication from Citalopram to Zoloft. *Id.* at 362.

In September 2004, Alsup had mental health treatment with Michael McNamara, P.M.H.N.P. Alsup told McNamara he had discontinued the Zoloft prescribed by Dr. Randall because he felt it increased his symptoms. McNamara believed Alsup had an undiagnosed bipolar disorder. He changed Alsup's medication from anti-depressants to Depakote. After two weeks, Alsup was less angry, but remained anxious. *Id.* at 463-65. In November 2004, Alsup reported his mood was much improved, but he had to change medications due to side effects. *Id.* at 458. Another medication improved Alsup's mood, agitation, and sleep, but caused other side effects. *Id.* at 439. In February 2005, however, McNamara started a new medication regimen and Alsup reported feeling much better with only mild anxiety which did not prevent him from activities. McNamara described his bipolar disorder as mild. *Id.* at 510-12.

In May 2005, Alsup's symptoms remained mild. *Id.* at 508. Alsup next saw McNamara in November 2005, for a medication review with minimal psychotherapy. McNamara adjusted Alsup's medication regimen to address reported depression and anxiety around crowds. *Id.* at 498-500. When Alsup next saw McNamara six months later, his refill requests indicated irregular compliance with his medications. McNamara altered his medication schedule to help him adhere to his treatment program. McNamara continued to assess Alsup's bipolar disorder as mild. *Id.* at 541-42,

544. In summary, except during the period of medication adjustment, between September 2004 and February 2005, McNamara described Alsup's symptoms as mild.

McNamara assessed Alsup's global functioning with GAF scores between 40 and 50 on several occasions between September 2004 and June 2006. Alsup argues the ALJ did not properly take the GAF scores into account. An ALJ is required to consider all relevant evidence in the case record, including opinion evidence from sources such as nurse practitioners who have seen the claimant in their professional capacity. 20 C.F.R. §§ 404.1527(b), 416.927(b); SSR 06-03p, 2006 WL 2329939, *4. An ALJ must determine the appropriate weight for such an opinion by considering the length of the treatment relationship, frequency of treatment, consistency with other evidence, relevant supporting evidence presented by the source, explanation offered by the source, and any other factor that tends to support or refute the opinion. 2006 WL 2329939, *4 -5.

The ALJ considered the GAF scores using these factors. Admin. R. 34-35. The ALJ pointed out that McNamara did not see Alsup until September 2004, two and one half years after the alleged onset of disability. McNamara's treatment notes do not include clinical observations that support his conclusions. In mental status examinations, Alsup consistently appeared somewhat depressed with mild anxiety. McNamara never noted indications of mania. Without clinical observations or explanation for his diagnosis and functional assessments, the ALJ could reasonably conclude McNamara relied primarily on Alsup's subjective reporting to reach his diagnosis and GAF scores.

The ALJ found Alsup's subjective reporting unreliable. Admin. R. 33. Alsup did not challenge that conclusion, and it is abundantly supported by the record. Without clinical support corroborating Alsup's subjective claims, McNamara's opinion is no more credible than the

statements upon which it was based. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ indicated other evidence was inconsistent with McNamara's GAF assessments. McNamara himself opined that Alsup's symptoms were mild when he adhered to prescribed medications.  No acceptable medical source reached the bipolar diagnosis McNamara found.  Dr. Randall, the only psychiatrist to evaluate Alsup, diagnosed a single episode of major depression, with mild anxiety and mood within normal limits.

Finally, even if the GAF scores accurately described Alsup's global functioning, each purports only to indicate his current function at a moment in time.  They do not describe a functional level that is ongoing.  Nor do they describe specific functional limitations in work-related activities from which the ALJ could have articulated limitations to be included in her RFC assessment.  As noted previously, GAF scores do not directly correlate to specific vocational limitations that are useful for determining disability for the purposes of the Social Security Act.

In conclusion, the ALJ properly considered McNamara's treatment notes and opinion together with all the evidence and drew reasonable conclusions based on the factors described in SSR 06-03.  Accordingly, the ALJ's evaluation of McNamara's opinion will not be disturbed.

Alsup contends the ALJ did not properly evaluate the lay statements of his wife, Polly Valley.

Valley testified that Alsup was fired from his last job because he lost interest.  Sometimes he would leave work early and some days he would not show up. Admin. R. 573.  She testified that Alsup does not drink alcohol and had not had alcohol for three and one half years preceding the hearing, since about 2002.  *Id.* at 574.

Valley testified that Alsup's grand mal seizures were controlled by medications, but he continued to have 5 to 7 small seizures per month. She could tell when a seizure occurred because his eyes become glassy, his face becomes flushed, he repeats himself, and does not know what he is doing. *Id.* at 577-78. Valley testified that Alsup cannot go shopping with her because he becomes anxious and freezes and says he thinks everyone is staring at him. He cannot cook, do laundry, or open the mail. *Id.* at 580.

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ considered Valley's testimony and found it was not credible. Admin. R. 36. The ALJ found Valley's assertion that Alsup continues to have 5 to 7 seizures a month contradicted by the medical evidence. Numerous medical sources indicate that Alsup's last seizure was during alcohol withdrawal in December 2002 and that he has not experienced seizures since beginning Dilantin at that time. *Id.* at 234, 246, 261, 270, 283, 289, 295, 366, 436, 495, 509.

In 2004, Alsup complained of momentary events involving a thumping sensation in his chest during which he acts slightly confused, appears glassy-eyed, and sometimes has loss of balance. *Id.* at 360. These events were extensively evaluated. A cardiac event monitor did not corroborate his subjective event diary; when he recorded symptoms such as a racing heart beat, the heart monitor recorded no such activity. His treadmill test and echocardiogram were negative. *Id.* at 362. His

electroencephalogram was normal. *Id.* at 467-68. He had a negative tilt table test. *Id.* at 456. He had a seizure consultation with Franklin Ellenson, M.D., in December 2004. Dr. Ellenson opined the episodes of palpitations, confusion, and limb movements were not classic seizure symptoms, although he was unable to rule out seizures. *Id.* at 447-50. An MRI of the brain was normal. *Id.* at 446-47. After December 2004, the progress notes of Alsup's physicians do not reflect reports of these episodes until February 2006. At that time, Alsup told Dr. Helgason he had experienced very few syncopal episodes, most recently a month and a half earlier. *Id.* at 495.

The ALJ could reasonably draw an adverse inference as to the credibility of Valley's assertion that Alsup experiences 5 to 7 seizures a month from the medical evidence indicating that no medical source has diagnosed a seizure disorder to explain these episodes and that the episodes are much less frequent than she claimed.

The ALJ did not accept Valley's assertions of ongoing limitations from anxiety because it was inconsistent with the reports of medical and mental health care providers. *Id.* at 35. As noted previously, Alsup and Valley both suggested Alsup's moodiness and anxiety were related to alcohol abuse. At his 2003 sleep study consultation, Alsup reported he had no major personal problems, did not worry much, and did not lose his temper easily. Valley said he was easy going and got along well with people. Alsup suggested discontinuing anti-depressant therapy because those drugs had been prescribed for problems that occurred while he was drinking. *Id.* at 304-05. At his psychiatric evaluation in July 2004, Dr. Randall found Alsup's mood within normal limits and noted only a mild level of anxiety. *Id.* at 362. In March 2005, Alsup told McNamara he was feeling much better after beginning a new medication therapy; he had only mild anxiety which was not preventing him from doing things. *Id.* at 512. McNamara continued to assess Alsup's mental health symptoms as "mild"

through the close of the evidence. *Id.* at 508, 542. These treatment records provide a substantial basis from which the ALJ could draw a reasonable adverse inference as to the credibility of Valley's assertion of debilitating mental health symptoms.

The ALJ did not accept Valley's assertion that Alsup had stopped using alcohol after going through medical detox in 2002 and had not used alcohol for over 3 years before the hearing. The record shows that Alsup was hospitalized for medical detoxification in December 2002 and May 2003. *Id.* at 204, 234, 246. In March 2004, Peter Zidd, M.D., noted that Alsup smelled of alcohol during a sleep study while simultaneously claiming abstinence from alcohol for 7 months. *Id.* at 269. In June 2004, Alsup admitted to Dr. Helgason that he "has a few drinks only when he says he can't handle things." *Id.* at 366. At the hearing in August 2006, the ALJ personally observed that Alsup "smelled strongly" of alcohol. *Id.* at 33. The foregoing provides substantial evidence from which the ALJ could reasonably draw an adverse inference as to the credibility of Valley's assertion that Alsup abstained from alcohol for several years before the hearing.

In summary, the ALJ properly considered Valley's statements, gave sufficient reasons for discounting the assertions, and the reasoning is supported by substantial evidence. Accordingly, the ALJ's evaluation of the lay witness statements will not be disturbed.

Alsup also contends the ALJ failed to give proper weight to the VA disability rating decision. The VA determined that Alsup was entitled to a disability pension for the following reason:

> The evidence shows that you have disabilities to include hypertension, seizures, hepatitis C, bipolar disorder, chronic obstructive pulmonary disease, and heart palpitations, which prevent you from working.

Admin. R. 76.

A VA disability rating does not bind an ALJ to reach the same result. 20 C.F.R. §§ 404.1504, 416.904. An ALJ must ordinarily give great weight to a VA determination of disability, but may discount it by giving "persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

Here the ALJ discounted the VA's disability determination after concluding the VA's reasons would not support disability under Social Security rules. Admin. R. 36. The ALJ pointed out that the record did not include evidence of functional limitations from hypertension. Alsup's heart palpitations were not corroborated by event monitoring and were unrelated to any cardiac impairment. *Id.* at 279, 454. Pulmonary function testing showed Alsup's COPD was very mild, leaving his vital capacity normal and affecting his expiratory flow only at low lung volumes. *Id.* at 301. The medical evidence showed that Alsup's major seizures are controlled by medication when he adheres to prescribed therapy and abstains from alcohol. Although he claims spells of confusion, as previously shown, no other seizure disorder has been established by medical evidence despite extensive evaluation. His mental impairments have been described as mild except for a period of medication adjustment between September 2004 and March 2005. Alsup was diagnosed with hepatitis C in June 2005, but there was no evidence of cirrhosis, jaundice, hepatonecrosis or current functional limitations and Alsup elected to wait 5 years to assess the disease process before beginning therapy. *Id.* at 502.

The ALJ concluded, based on the foregoing, that the evidence did not support functional limitations that would establish disability under the Social Security Act, even if it did support a disability rating under VA regulations. This reasoning is persuasive, specific, and valid and rests on inferences reasonably drawn from the evidence. *McCartey*, 298 F.3d at 1076.

### III.    **Vocational Evidence**

The ALJ determined that Alsup could not perform his past work, but retained the ability to perform other work in the national economy.  Admin. R. 37.  Alsup contends the ALJ elicited vocational testimony from the VE based on assumptions that did not contain all of his limitations and restrictions.  He contends the ALJ should have included additional limitations for mental impairments, minor seizures, and episodes of syncope.  The ALJ considered all of the evidence of such limitations and found them unsupported by the record.  An ALJ is not required to incorporate limitations based on evidence that she properly discounted. *Batson,* 359 F.3d at 1197-98; *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-65 (9th Cir 2001).

The ALJ elicited testimony from the VE with vocational assumptions based on the limitations she found supported by the record as a whole.  The hypothetical limitations reflected reasonable conclusions that could be drawn from the evidence.  The court must uphold the Commissioner's findings of fact if they are supported by substantial evidence, even if the evidence can rationally be interpreted in a way that supports the claimant's assertion of additional limitations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  Alsup's contention that the Commissioner's determination was based on improper vocational testimony cannot be sustained.

### IV.    **Materiality of Alcohol Abuse**

Alsup contends the ALJ erred by failing to show that alcohol abuse is material to his disability claim.  A claimant cannot be disabled within the meaning of the Social Security Act if drug addiction or alcoholism is a contributing factor material to the determination of disability.  42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir.

2001).  Accordingly, if a claimant is found disabled, and there is medical evidence of a substance

abuse disorder, the ALJ must perform the sequential decision-making process a second time to

determine whether drug addiction or alcoholism "is a contributing factor material to the

determination of disability."  20 C.F.R. §§ 404.1535, 416.935.  The key factor is whether the ALJ

would still find the claimant disabled if he stopped using alcohol.  *Id.*; *Ball v. Massanari*, 254 F.3d

817, 821 (9th Cir. 2001). In such materiality determinations, the claimant bears the burden of

proving that drug addiction or alcoholism is not a contributing factor material to the disability

determination.  *Id.*

There is no issue regarding the materiality of Alsup's alcohol dependence because the ALJ

did not find Alsup disabled, even without excluding functional limitations that may be associated

with alcohol use.  Alsup's argument that the ALJ erred in this regard cannot be sustained.

## CONCLUSION

For these reasons, the court **AFFIRMS** the Commissioner's decision and **DISMISSES**

this matter.

IT IS SO ORDERED.

Dated this 4th day of June, 2009.


 /s/ Garr M. King
GARR M. KING
United States District Judge